**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

DOMINION TRANSMISSION, INC.,

Plaintiff,

v. Civil Action No. 3:13cv442-JAG

PRECISION PIPELINE, INC.,

Defendant.

# MEMORANDUM OPINION

This matter comes before the court on the defendant's motion to dismiss for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1). (Dk. No. 7).

The case concerns a contractual dispute over change orders in a construction contract. The defendant's motion to dismiss alleges that this Court lacks subject matter jurisdiction because the plaintiff has failed to submit the instant dispute to formal mediation, a contractually mandated prerequisite to filing litigation. While this Court does possess subject matter jurisdiction over the action, the Court finds that the plaintiff did not abide by its contractual obligation to submit the dispute to formal mediation, and that accordingly, this matter should not yet be before this Court. The Court therefore GRANTS the defendant's Motion to Dismiss, and DISMISSES the plaintiff's complaint WITHOUT PREJUDICE.

## I. MATERIAL FACTS

The plaintiff (Dominion Transmission, hereinafter "Dominion") is a utility company. Dominion contracted with the defendant (Precision Pipeline, hereinafter "Precision") to construct a portion of the "Appalachian Gateway" pipelines. The parties entered into two different contracts (hereinafter "the contract"), which for the purpose of this motion to dismiss are

indistinguishable, to construct sections of pipeline in Pennsylvania and West Virginia. The contract contains a forum selection clause (which also operates as a choice of law clause) designating Virginia as the exclusive forum. Article 23 of the contract provides that the parties will abide by a multi-tiered, progressive alternative dispute resolution ("ADR") process before commencing litigation. Article 23 requires that in the event of a dispute, the aggrieved party must (1) notify the other party of the dispute, then, barring immediate resolution, (2) meet and discuss the issue among the project managers for both parties. If that meeting does not resolve the dispute, the parties must then (3) proceed to a meeting of senior officers. Should that meeting, in turn, fail to produce an accord, the parties must (4) proceed to mediation governed by American Arbitration Association (AAA) standards. The parties agree that they must complete the first three steps of the ADR process before commencing litigation; Dominion, however, disputes the necessity of the fourth and final step (mediation) before any party may file suit.

Despite construction complications and increases in cost, Precision timely completed the pipelines, which went into service in September, 2012.

The parties met in October 2012 to attempt to "close-out" the contract, but did not reach an agreement. On February 1, 2013, Precision presented to Dominion an additional $56 million in change order requests, and shortly thereafter, filed three separate mechanic's liens, amounting to $52 million, on Dominion's pipelines in Pennsylvania and West Virginia, asserting that any delay in filing would have resulted in a waiver of its ability to file such mechanic's lien actions under state law. To preserve their right to pursue those actions, Precision also filed foreclosure actions in West Virginia in August 2013, but at present has effectively stayed those proceedings.[1]

[1] Nothing in this opinion should be interpreted to suggest the procedural or substantive validity of the mechanics' liens or foreclosure actions in this case. Those matters lie within the exclusive purview of the state courts.

The parties engaged in contentious communications from February to July 2013, during which time Dominion invoked its contractual audit rights and the parties sparred over the amount, format, and content of Precision's required production of information. While both parties referred to Article 23's ADR provision in their communications, and counsel for the parties met on at least one occasion, neither Dominion nor Precision initiated either a meeting of senior executives (step 3) or submission of the dispute to formal, AAA-brokered mediation (step 4). In sum, the parties did not complete the final two steps of the contractually mandated ADR prior to Dominion's filing of the instant litigation in this Court on July 11, 2013.

## II. STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) places the burden on the plaintiff, as the party asserting jurisdiction, to prove that federal jurisdiction is proper. *White v. CMA Const. Co., Inc.*, 947 F. Supp. 231, 233 (E.D. Va. 1996) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982). A Rule 12(b)(1) motion may challenge subject matter jurisdiction in two different ways. First, a Rule 12(b)(1) motion may attack the complaint on its face, asserting simply that the complaint "fails to allege facts upon which subject matter jurisdiction can be based." *Id.* (quoting *Adams*, 697 F.2d at 1219). If such is the case, "the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Id.*

A defendant's Rule 12(b)(1) motion may, alternatively, challenge "the existence of subject matter jurisdiction in fact, quite apart from any pleadings." *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). In this instance, the district court's "very power to hear the case" is at issue. *Walker v. U.S. Dep't of the Army*, 60 F. Supp. 2d 553, 555 (E.D. Va. 1999) (quoting *Mortensen*, 549 F.2d at 891). The district court is then free to weigh

the evidence to determine the existence of jurisdiction. *Id.* (citing *Adams*, 697 F.2d at 1219). "[N]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* (quoting *Mortensen*, 549 F.2d at 891).

Precision's motion falls into the second category. Precision asserts that this court lacks subject matter jurisdiction over the dispute because the parties' contract mandates adherence to an ADR process before either may commence litigation – in short, that the court lacks power to hear the case as long as a contractual condition precedent remains unfulfilled.

## III. DISCUSSION

Precision's motion to dismiss for lack of subject matter jurisdiction relies primarily on its assertion that Article 23's contractual requirement that the parties submit disputes to formal mediation prior to commencing litigation constitutes a condition precedent to such litigation. Review of the parties' contract indicates that Precision's interpretation of formal mediation as a mandatory prerequisite to litigation is correct; to file the instant litigation, Dominion must have first complied with the procedures outlined in Article 23. Precision's motion, however, incorrectly conflates the question of subject matter jurisdiction with that of Dominion's failure to complete a condition precedent. Subject-matter jurisdiction concerns the court's power to hear a case. *See United States v. Cotton*, 535 U.S. 625, 630 (2002). The Court's power to hear a contractual dispute is unaffected by whether the parties have complied with that contract. Dominion's non-compliance with that condition precedent, then, does not deprive this Court of subject matter jurisdiction over the parties' dispute. While the Court may not dismiss the complaint under Rule 12(b)(1) grounds, it is vested with the discretion to determine an

appropriate judicial remedy for Dominion's failure to comply with a condition precedent, to include staying the case[2] or dismissing the complaint.[3]

Dominion asserts that Precision waived its right to insist upon Dominion's compliance with the condition precedent, a legal argument which if correct would forestall any right Precision might have to judicial intervention in its favor. Precision's words and actions (Dominion relies on Precision's decision to file mechanics' liens), however, do not demonstrate a knowing and intentional relinquishment of its contractual right. This Court will not consider Dominion's proffered "first-to-breach" theory; applying that reasoning in the context of an ADR provision would be impractical and inappropriate. Article 23's formal mediation provision required Dominion to submit its dispute to mediation prior to filing litigation, and Precision did not waive its right to insist on adherence to the parties' contract. In light of Dominion's failure to comply with the parties' contractual ADR provision, the Court finds that this matter should not yet be before the Court, and accordingly, dismisses the complaint.

**A. Subject Matter Jurisdiction Unaffected**

Precision's motion to dismiss asserts that Dominion's failure to abide by a contractual condition precedent necessarily deprives this court of subject matter jurisdiction. This is incorrect. "[F]ederal courts have held in a variety of contexts that the question of subject matter jurisdiction is analytically distinct from that of failure to satisfy conditions precedent to suit."

---

[2] *See, e.g,. Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008); *Kane Builders S & D, Inc. v. Maryland CVS Pharmacy, LLC*, No. 12-3775, 2013 WL 2948381 (D. Md. June 13, 2013) ("when enforcing agreements to mediate, "district courts have inherent, discretionary authority to issue stays in many circumstances, and granting a stay to permit mediation (or to require it) will often be appropriate." (quoting *Advanced Bodycare Solutions, LLC v. Thione Intern. Inc.*, 524 F.3d 1235, 1241 (11th Cir. 2008))).

[3] *See, e.g., 3-J Hospitality, LLC v. Big Time Design, Inc.*, No. 09-61077-CIV, 2009 WL 3586830 (S.D. Fla. Oct. 27, 2009) ("Where the parties' agreement requires mediation as a condition precedent to arbitration or litigation, the complaint must be dismissed."); *Tattoo Art, Inc. v. Tat Int'l, LLC*, 711 F. Supp. 2d 645, 651 (E.D. Va. 2010).

*N-Tron Corp. v. Rockwell Automation, Inc.*, No. 09-0733-WS-C, 2010 WL 653760, at *4 (S.D. Ala. Feb. 18, 2010). A plaintiff's failure to comply with the terms of a contract prior to bringing suit may affect the *plaintiff's* ability to bring the suit, but it does not affect whether the *district court* possesses the power to hear the case. *See Harris v. Amoco Production Co.*, 768 F.2d 669, 680 (5th Cir. 1985) ("[W]hile the failure to comply with a condition precedent usually means that a plaintiff cannot bring suit, . . . it does not mean that the district court lacks subject matter jurisdiction if the case is otherwise before it."); *Griffin v. Dugger*, 823 F.2d 1476, 1482 n. 12 (11th Cir. 1987) (explaining that in Title VII context, a plaintiff's "failure to satisfy the conditions precedent [to filing suit] does not, standing alone, deprive federal district courts of subject matter jurisdiction").

In this instance, Dominion's complaint is fundamentally flawed by virtue of its non-compliance with a condition precedent. This deficiency impairs *Dominion's* right to access the courts; it has no such effect on the *Court*'s jurisdiction. The Court has the power to hear the parties' contractual dispute, regardless of whether the parties themselves have complied with the terms of its ADR provision. "[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). A contractual provision, "'even if unalterable on a party's application,' does not reduce the adjudicatory domain of a tribunal. . . ." *Union Pac. R. Co. v. Bhd. of Locomotive Engineers & Trainmen Gen. Comm. of Adjustment, Cent. Region*, 558 U.S. 67, 81-82 (2009) (citation omitted). Accordingly, the Court may not dismiss the complaint under Rule 12(b)(1).

**B. Remedy for Non-Performance of Condition Precedent**

By virtue of its subject matter jurisdiction over the dispute, the Court possesses the authority to grant other judicial remedies in relation to Dominion's failure to comply with Article 23's condition precedent. The Court possesses the "broad authority . . . to control its docket."

*United States v. Clark*, 172 F.3d 45 (4th Cir. 1999) The Court, when confronted with a defendant's objection that the plaintiff failed to comply with a condition precedent, has the discretion to either stay or dismiss the case. *See, e.g,. Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008) ("[T]he proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright."); *Tattoo Art, Inc. v. Tat Int'l, LLC*, 711 F. Supp. 2d 645, 651 (E.D. Va. 2010) ("'[F]ailure to mediate a dispute pursuant to a contract that makes mediation a condition precedent to filing a lawsuit warrants dismissal.'") (internal citations omitted).

As discussed at length *infra*, the clear terms of Article 23 required Dominion to submit its dispute to an AAA-brokered mediation process before filing litigation. Dominion did not do so.

In *Tattoo Art*, this Court resolved a nearly identical issue. Accordingly, we "begin with the proposition that 'failure to mediate a dispute pursuant to a contract that makes mediation a condition precedent to filing a lawsuit warrants dismissal.'" *Tattoo Art*, 711 F. Supp. 2d at 651. When parties to a contract bind themselves to complete certain prerequisites prior to commencing litigation (thereby agreeing that the other party will not be subject to a court's jurisdiction until there is mutual compliance with that condition), "the appropriate remedy is to dismiss the action." *Id.*

As noted above, Article 23 of the parties' contract (Ex. 1, Dk. No. 24) requires the parties to proceed through a progressive, multi-tiered ADR process before they may proceed to file litigation.[4] The wording of Article 23 clearly indicates that the final step of the ADR process (to be undertaken if "the Parties have been unable to resolve a dispute pursuant to [the procedures in the preceding step])," requires submission of the dispute to an AAA-approved mediator. Formal

[4] Article 23 governs "any dispute" that "arises on matters concerning this contract." The dispute at issue (the validity of Precision's Feb. 1, 2013 change orders) certainly falls within Article 23's purview.

mediation, defined and mandated by §23.2 ("Mediation"), is as mandatory a prerequisite to litigation as any of the ADR procedures that precede it in §23.1.1. The "Mediation" section (§23.2) provides that, should the parties fail to resolve a dispute after duly completing those first and second steps of the ADR process,[5] then "the Parties *will* attempt to mediate a resolution of the dispute with the assistance of a qualified mediator" (emphasis added).

The following section, §23.3 ("Litigation"), states that the "Parties may pursue litigation" *only* "[i]f, despite the Parties' attempts to *mediate* a dispute, such dispute remains unresolved" (emphasis added).[6] Dominion cannot seriously dispute the existence of its contractual obligation to, at a bare minimum, "attempt to mediate a dispute" before filing related litigation.

Dominion misinterprets Article 23 as comprising, apparently, an aspirational mediation provision, one which neither requires the parties to complete mediation, nor bars them from filing litigation before even attempting to submit the dispute to formal mediation. Dominion's attempt to demonstrate that it satisfied its obligations under Article 23 prior to filing the instant litigation on July 11, 2013, also fails. Dominion's reliance on a meeting of the parties' "senior executives" on October 2, 2012, has no relevance to the current dispute at issue, which arose, by both parties' accounts, when Precision filed $56 million in change orders on Feb. 1, 2013 (and shortly thereafter filed mechanics' liens in West Virginia and Pennsylvania). In any event, regardless of whether the dispute in question ever reached the "meeting of senior executives" stage, neither party contends the parties *ever* initiated – let alone completed – formal mediation.

---

[5] "Notice" and "Administrative Committee Procedure," actions outlined in §23.1.1 ("Administrative Committee Procedure Timeframe").

[6] Notably, the term "mediate," as used throughout the entirety of Article 23, refers *only* to *formal mediation* efforts – not, as Dominion implies in its brief, to the preceding ADR steps discussed in §23.1.1, such as "Notice" and meetings between senior executives of both parties.

**C. Waiver & Estoppel**

Dominion's failure to complete a contractually-mandated prerequisite to filing requires dismissal unless Dominion can prove either that Precision somehow waived its right to insist upon adherence to Article 23's mediation process, or that Precision should be estopped from asserting its contractual rights by virtue of its own, prior breach. Both theories rely on Precision's filing of mechanics' liens; neither succeeds.

*1. Precision did not knowingly and intentionally waive its right to mediation*

Waiver consists of two elements: "(1) 'knowledge of the facts basic to the exercise of the right' and (2) 'the intent to relinquish that right.'" *Tattoo Art*, 711 F. Supp. 2d at 652 (quoting *Va. Polytechnic Inst. & State Univ. v. Interactive Return Serv.*, 267 Va. 642, 652 (2004) (internal citation omitted). To establish that Precision waived its right to insist upon mediation, Dominion bears the burden of proving "'the essentials of such waiver . . . by clear, precise, and unequivocal evidence.'" *Id.* (quoting *Va. Polytechnic Inst.*, 267 Va. at 652). Dominion's task in proving Precision's actions constituted an "intentional" and "knowing" waiver is a difficult one. The court in *Tattoo Parlor*, considering a defendant's (1) lengthy delay in requesting mediation after the plaintiff filed litigation, after (2) previously (and repeatedly) refusing the plaintiff's offers to enter mediation, still did *not* "represent an *intentional,* (rather than implied) relinquishment of Defendants' rights under the [contract] . . ." *Id.* (emphasis in original).

In the instant case, Dominion relies on Precision's actions in filing mechanics' liens on Dominion's property in West Virginia and Pennsylvania as constituting a waiver of its Article 23 rights. Federal law has long favored the enforcement of ADR provisions. *See Ritzel Communications v. Mid-American Cellular*, 989 F.2d 966, 968-69 (8th Cir. 1993). Case law does not provide a clear determination as to whether a party's decision to file mechanics' liens acts as a waiver of its contractual ADR rights. *See, e.g., N. Cent. Const., Inc. v. Siouxland*

*Energy & Livestock Co-op*, 232 F. Supp. 2d 959, 964 (N.D. Iowa 2002) (reviewing circuit court case law, and determining that "case law is not dispositive on the issue of waiver in the context of mechanic's liens"). The parties' briefs reflect both the paucity and inconclusive nature of the precedent that does exist, citing to conflicting, non-binding state court opinions that typically refer only tangentially to the precise issue at hand.[7]

In light of the federal bent towards enforcement of ADR provisions, Dominion's burden as the party asserting waiver, and the above-noted high standard required for establishing waiver, the Court finds that Dominion has not proffered "clear, precise, and unequivocal evidence" that Precision knowingly and intentionally waived its right to insist upon arbitration.

*2. "First to Breach" inapplicable in the context of an ADR provision*

Dominion argues that Precision should be estopped from relying on Article 23 by virtue of Precision's own, previous breach of that same provision. In support, Dominion cites the contractual rule that the party "first to breach" a material term of a contract may not later attempt to enforce that contract. Dominion provides no precedent to support its claim that the "first to breach" or "first material breach" rule of contract enforcement applies – or should apply – in the context of voiding party's access to a contractually-guaranteed ADR process.

Dominion's novel approach would require the party insisting on adherence to a valid contractual ADR provision to shoulder the evidentiary burden of proving that it retains the right to insist upon compliance with that provision. The party seeking to *avoid* that ADR provision, however, would bear no such burden of proof – despite (and illogically, *because* of) its decision to race to court in *indisputable* defiance of that same ADR provision. Mandating this evidentiary hurdle to the enforcement of ADR provisions would substantially undermine the utility of such

---

[7] The dearth of clear judicial guidance on this issue undermines Dominion's claim that Precision's decision to file mechanics' liens constituted a *knowing* wavier of its ADR rights.

ADR provisions, and cast doubt on their enforceability.[8] The Court will not apply a proposition that finds no support in case law or logic, and so dismisses the argument.

## IV. CONCLUSION

Dominion and Precision, two sophisticated corporations, negotiated the instant contract at arms' length and with (no doubt) the advice and assistance of competent legal counsel. Precision, as the party insisting upon adherence to the terms of Article 23, is entitled to the "benefit of its bargain." *Tattoo Art*, 711 F. Supp. 2d at 652. Article 23 unambiguously requires that Dominion submit any dispute to mediation prior to commencing litigation. This Court will not substitute a judicial resolution for the parties' dispute when a valid, agreed-upon contractual remedy properly governs. Until Dominion complies with the terms of Article 23, the instant dispute should not be before this Court.

For the reasons set forth above, the Court GRANTS the defendant's motion to dismiss.

The Court will enter an appropriate order.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

Date: November 5, 2013
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

---

[8] The Court applies the same rationale to the issue of the parties' forum selection clause (Article 24). Should this matter properly return before the Court, any argument as to the unenforceability of this clause will be viewed with great skepticism. *See Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996) ("[T]he Supreme Court has consistently accorded choice of forum and choice of law provisions presumptive validity.").